ROBERT C. ARMISTEAD and another *v.* HARVEY SANDERSON.

Art. 221 of the Code of Practice which provides that a creditor may, under certain circumstances, arrest a debtor about leaving the state, when the debt is not yet due, is limited to cases in which such debtor was a resident at the time of contracting the debt, or being a non-resident, bound himself not to leave the state before giving security, or before the debt became due.

Where a debt has been contracted with a non-resident, by a party who knew him to be such, the former cannot be arrested before the debt becomes due, on the ground that he is about leaving the state with the intention of defrauding his creditors, where such intended departure is the only circumstance offered to justify the suspicion.

THIS case was tried before the Commercial Court of New Orleans, *Watts,* J.

*J. C. Clarke,* for the appellants.

*Bradford,* for the appellee.

GARLAND, J. The plaintiffs are appellants from a judgment setting aside an order of arrest, under which the defendant was held to bail. It appears that in the course of the summer of the year 1839, the plaintiffs sold the defendant, who is a merchant residing in Texas, goods to the amount of about $3,500; to secure the payment of which sum, he executed his own notes payable in October, 1839, and January and April, 1840, and also deposited with them as collateral security, a note for $10,000, drawn by a person in Texas, and secured by a mortgage on land in that country On account of these notes, and of the price of other merchandise not so secured, the defendant made several payments, which reduced the whole demand to $2,814, of which $1,079 87, became due on the 13th January, 1840, and about the same sum on the 13th of April following. In the month of December, 1839, the defendant visited New Orleans on business; the sum of $650 was then due to plaintiffs, which he promised to pay or provide for, before he returned to Texas. He accordingly made an arrangement with one A. G. Cochran to pay that amount, of which the plaintiffs were notified. They made no objection to the arrangement, but seem to have looked to Cochran for payment, who promised to pay, but when applied to, postponed doing so under various pretexts, until late in the evening of the day preceding that on which the defendant was to leave on his return home, when they commenced this suit,

claiming the whole sum of $2,814, and alleging that the defendant was about to leave the state with the intention of defrauding his creditors, from the facts that he had not provided for the payment of his debts, and had made false statements relative to the arrangements made for the benefit of plaintiffs. On this affidavit, the defendant was arrested, and gave bail in the sum of $3,300; immediately after which, Cochran called on the plaintiffs and offered to pay all that was due, which they refused to receive unless their whole claim was settled.

The defendant then took a rule on the plaintiffs to show cause why the writ of arrest should not be set aside, on the ground that the affidavit was untrue and insufficient; on the trial of which rule the Commercial Court discharged the defendant from custody, on his depositing in court the sum of $650. We think the judge did not err in so doing. At the time that the plaintiffs contracted with the defendant, they knew that he was a resident of a foreign country, and took from him security for the debt he contracted with them. When he returned in December, 1839, he told Cochran that he must pay them about $650 before he left the city, and arranged with him to settle it. He told the plaintiffs of the arrangement, who appeared to be satisfied, and did not intimate the contrary, until they had applied several times to Cochran for payment, and arrested the defendant, alleging fraud against him, because Cochran did not comply with his engagement. The circumstance of the plaintiffs refusing after they had arrested the defendant, to receive what was actually due them at the time, shows that they wished to extort more from the defendant in the way of security than he had promised to give.

The article 221 of the Code of Practice relied on by the plaintiffs, does not apply to a case like the present. It is limited to cases where the debtor is a resident at the time of contracting the debt, or being a non-resident engages to give security, or not to leave the state before the debt shall become due; but when a debt is contracted with a non-resident, the creditor knowing him to be such, he is not permitted to arrest his debtor before the debt becomes due, on the ground that he is about to depart with the intention of defrauding his creditors, where there are no other suspicious circumstances. In this case, the defendant was about to return to

his known and usual residence, in the ordinary pursuit of his business; and to permit him to be arrested under such circumstances, for a debt not due, would be converting a law made for beneficial purposes, into an engine of oppression.

*Judgment affirmed.*